# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

DANIEL ORMROD,

      Plaintiff,

vs.                                           No. CIV 17-0706 JB/KK

HUBBARD BROADCASTING, INC.,
d/b/a KOB 4,

      Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on the Defendant's Motion to Dismiss Complaint for Defamation, filed July 11, 2017 (Doc. 5)("Motion"). The Court held a hearing on October 23, 2017. The primary issues are: (i) whether the Court may properly consider, in ruling on the Motion under rule 12(b)(6) of the Federal Rules of Civil Procedure, the State of New Mexico Uniform Incident Report, filed July 11, 2017 (Doc. 5-2)("Police Report"), when Plaintiff Daniel Ormrod did not attach it to or reference it in his Complaint for Defamation, filed June 6, 2017 in <u>Ormrod v. Hubbard Broadcasting, Inc.</u>, No. D-202-CV-2017-04001 (Second Judicial District Court, County of Bernalillo, State of New Mexico), filed in federal court July 6, 2017 (Doc. 1-2)("Complaint"); (ii) whether the fair report privilege shields Defendant Hubbard Broadcasting, Inc. ("KOB 4") from Ormrod's defamation claim under New Mexico common law; and (iii) whether Ormrod, a public school teacher, is considered a public official for a defamation claim's purposes. The Court concludes that: (i) the Court may properly consider the Police Report in ruling on the Motion; (ii) the fair report privilege does not shield KOB 4 from liability on the facts before the Court; and (iii) Ormrod is not a public official for a defamation claim's purposes. Accordingly, the Court will deny the Motion.

## FACTUAL BACKGROUND

The Court draws its facts from Ormrod's Complaint. The Court accepts Ormrod's factual allegations as true for the limited purpose of deciding the Motion. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)("Iqbal")(clarifying the "tenet that a court must accept as true all of the [factual] allegations contained in a complaint")(alteration added)(citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)); Archuleta v. Wagner, 523 F.3d 1278, 1283 (10th Cir. 2008)(concluding that a court must "accept as true all well-pleaded facts, as distinguished from conclusory allegations" when deciding a motion to dismiss).

Ormrod is a resident of Bernalillo County, New Mexico, and works for the Albuquerque Public Schools ("APS") as a teacher at Dennis Chavez Elementary School. See Complaint ¶¶ 1, 3, 6, at 1-2. Hubbard Broadcasting ("KOB 4") is a Minnesota corporation that operates the website www.kob.com and the Albuquerque television station KOB 4. Complaint ¶ 2, at 1. On or about May 5, 2016, KOB 4 reporter Erica Zucco received an anonymous news tip concerning allegations against Ormrod. See Complaint ¶ 6, at 2. Zucco then contacted APS Communication Director Monica Armenta and asked about the allegations. See Complaint ¶ 7, at 2. Armenta told Zucco that, as of that date, May 12, 2016, she did not know of any allegations against Ormrod. See Compliant ¶ 8, at 2. In fact, Ormrod had not been charged, nor was he ever charged, with a crime for any actions occurring on that date. See Complaint ¶ 9, at 2.

Around this time, KOB 4 employee Johnny Chandler "obtained a form prepared by the Albuquerque Public Schools Police Department which was a notification to [Ormrod] of an investigation which necessitated that he be aware of his constitutional rights." Complaint ¶ 10, at 2. "The document did not state [Ormrod] was being charged with a crime, nor did it indicate any criminal charges were being filed against [Ormrod]." Complaint ¶ 11, at 2. As professional

journalists, Chandler, Zucco, and KOB 4 editors and reporters know that "criminal charges cannot be filed without a criminal complaint or grand jury indictment."  Complaint ¶ 12, at 2. Regardless, KOB 4 did not conduct any other research on the anonymous news tip and published a false news story concerning Ormrod.  See Complaint ¶ 13, at 2.  Specifically, KOB 4 falsely reported on its website, on May 12, 2016, that "Ormrod was charged with felony child abuse," Complaint ¶ 14, at 2, despite "not having any definitive information regarding any formal criminal charges" filed against Ormrod, Complaint ¶ 14, at 2.

After publishing the story, KOB 4 confirmed that its reporting was false and changed the wording in subsequent news stories.  See Compliant ¶ 15, at 3.  Despite learning that Ormrod was not actually charged with "felony child abuse," KOB 4 "took no action to correct its May 12, 2016 . . . version of the story, nor did it issue any kind of retraction concerning its false reporting."  Complaint ¶ 16, at 3.  KOB 4 keeps records of the number of people who visit its website for advertising purposes.  See Complaint ¶ 17, at 2.

## PROCEDURAL BACKGROUND

Ormrod filed his Complaint in state district court on June 6, 2017.  See Complaint at 1. The Complaint alleges a single count of defamation against KOB 4.  See Complaint ¶¶ 20-28, at 3-4.  KOB 4 removed the case to federal court on July 6, 2017, on the basis of diversity jurisdiction.  See Notice of Removal, filed July 6, 2017 (Doc. 1)("Notice of Removal").[1]

---

[1]"When a requirement goes to subject-matter jurisdiction, courts are obligated to consider *sua sponte* issues that the parties have disclaimed or have not presented."  Gonzalez v. Thaler, 565 U.S. 134, 141 (2012).  Here, the parties must be citizens of different states for the Court to have diversity jurisdiction.  See 28 U.S.C. 1332(a)(1).  Although the parties do not contest the Court's diversity jurisdiction, the pleadings do not assert Ormrod's citizenship.  The Notice of Removal states that Hubbard Broadcasting is a Minnesota corporation with its principal place of business in St. Paul, Minnesota, see Notice of Removal at 2, but it never asserts Ormrod's citizenship.  The Complaint states that Ormrod "is a resident of Bernalillo County, New

1.    **The Motion.**

KOB 4 contends that its news story was based on the Police Report, which identifies Ormrod's "offense" as "child abuse." Motion at 2 (citing Police Report at 1). KOB 4 further argues that its story was also based on a letter which APS sent to the parents of Dennis Chavez Elementary students, stating that "'Daniel Ormrod, a second-grade teacher here at Dennis Chavez, was cited on child abuse charges Friday stemming from an incident involving a student here.'" Motion at 2 (quoting Albuquerque Public Schools Letter at 1, filed July 11, 2017 (Doc. 5-3)("APS Letter")).

KOB 4 next argues that the Court may consider three documents outside of the Complaint in ruling on the Motion. First, KOB 4 asserts that the Court should consider the KOB 4 News Story, filed July 11, 2017 (Doc. 5-1)("News Story"), because Ormrod references it in the Complaint, and because of its "centrality to Plaintiff's claims and its undisputed authenticity." Motion at 4. Second, KOB 4 avers that the Court should consider the Police Report, because the Complaint references it, and it is central to Ormrod's claims. See Motion at 5. Third, KOB 4

_____

Mexico." Complaint ¶ 1, at 1. "An individual's residence [, however,] is not equivalent to his domicile and it is domicile that is relevant for determining citizenship." Siloam Springs Hotel, L.L.C. v. Century Surety Co., 781 F.3d 1233, 1238 (10th Cir. 2015). The Court is relatively confident that Ormrod is a New Mexico citizen and that it has diversity jurisdiction. Nevertheless, there is a presumption against federal jurisdiction "and the party invoking federal jurisdiction bears the burden of proof" that such jurisdiction lies. Full Life Hospice, LLC v. Sebelius, 709 F.3d 1012, 1016 (10th Cir. 2013)(Tymkovich, J.). Accordingly, the Court orders that, within ten calendar days of the date of this Memorandum Opinion and Order, KOB 4 shall show cause why the Court should not remand this case to the Second Judicial District Court, County of Bernalillo, State of New Mexico, for lack of diversity jurisdiction. The Court is satisfied that the amount-in-controversy requirement, 28 U.S.C. § 1332(a), is met based on KOB 4's assertion that Ormrod "requested well over $75,000 to resolve this matter out of court," Notice of Removal at 2, because "when a defendant seeks federal-court adjudication, the defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court," Dart Cherokee Basin Operating Co., LLC v. Owens, 135 S. Ct. 547, 553 (2014).

contends that the Court should also consider the APS Letter, because KOB 4's story was based, in part, on that letter. See Motion at 5.

KOB 4 argues that "KOB's report is squarely protected by the Fair Report Privilege," so the Court should dismiss the case. Motion at 2. According to KOB 4 "'[t]he essence of the fair report privilege is that no liability will attach for the republication of the defamatory statement so long as the republication is a fair and accurate report of an official action or public proceeding.'" Motion at 6 (quoting Stover v. Journal Publishing Co., 1985-NMCA-113, ¶ 14, 731 P.2d 1335, 1338). According to KOB 4, this privilege "applies to the republication of statements made in police reports." Motion at 6 (citing Restatement (Second) of Torts § 611 cmt. h). KOB 4 further contends that the fair report privilege applies to the APS Letter. See Motion at 6 (citing Restatment (Second) of Torts § 611, at 297). According to KOB 4, it is not liable for defamation, because it fairly and accurately reported the APS Letter's and the Police Report's contents. See Motion at 7. KOB 4 therefore concludes that the Court should dismiss the Complaint. See Motion at 7.

## 2.    **The Response.**

Ormrod responds to the Motion. See Plaintiff's Response to Defendant's Motion to Dismiss Complaint for Defamation, filed July 26, 2017 (Doc. 6)("Response"). Ormrod first challenges the documents that KOB 4 wishes the Court to consider. Response at 3. Specifically, Ormrod asserts that, "first, the documents may not have been in the possession of the Defendant at the time of publication. Second, none of the documents provided reflect that Plaintiff was charged with a crime in court." Response at 3. Ormrod continues that "none of the documents provided by Defendant in its motion were actually cited in the Plaintiff's complaint." Response at 4.

Ormrod next argues that the News Story which KOB 4 provides to the Court is "not the actual version web version which was published on its website." Response at 5. Ormrod contends that the actual KOB 4 story is the one printed on the last page of the Response. See Response at 10. Ormrod also disputes KOB 4's use of the Police Report, arguing that KOB 4 did not receive it until after it published its story about Ormrod. See Response at 6. Ormrod then asserts that the Court should not consider the APS Letter, because it has not been authenticated, and it is unclear whether KOB 4 relied on this document in publishing its story. See Response at 6.

Next, Ormrod contends that "New Mexico Case law has specifically rejected the assertion of the Fair Report Privilege when a journalist in a defamation case added additional facts not contained in a police report." Response at 7 (citing Furgasson v. Clausen, 1989-NMCA-084, 785 P.2d 242). Finally, Ormrod argues that KOB 4 attempts to minimize the impact of its story, but that "the degree upon which the elements of defamation are to be satisfied is up to the trier to fact. Plaintiff's assertions at this point are questions of fact and do not belong in a motion to dismiss." Response at 9. Ormrod concludes that the Court should deny the Motion. See Response at 9.

### 3.     The Reply.

KOB 4 replies to the Response. See Reply in Support of Motion to Dismiss Complaint for Defamation, filed August 9, 2017 (Doc. 9)("Reply"). KOB 4 first argues that the Police Report "was faxed from 'APS Communications' as stated in the fax header, which would seem to be sufficient to establish its authenticity." Reply at 1 (quoting Police Report at 1). KOB 4 argues that the Police Report and the APS Letter are central to Ormrod's claim, and their authenticity is established, so the Court should consider them. See Reply at 2.

KOB 4 next argues -- for the first time in the Reply brief -- that Ormrod, as a public school teacher, is considered a public official for the purposes of a defamation claim, and, therefore, the actual malice standard for defamation should apply.  See Reply at 2-3.  According to KOB 4, Ormrod does not properly plead defamation with an actual malice standard in his Complaint and instead relies on a negligence standard.  See Reply at 3.  KOB 4 then re-asserts its arguments that the Court should consider the Police Report and the APS Letter.  See Reply at 4.  KOB 4 concludes that the Court should dismiss the Complaint.  See Reply at 5.

4.      **The Hearing.**

The Court held a hearing on October 23, 2017.  See Draft Transcript of Motion Proceeding at 1:4 (taken October 23, 2017)(Court)("Tr.").[2]  KOB 4 argued that a public school teacher is a public official, requiring Ormrod to plead actual malice.  See Tr. at 10:20-25 (Rieder).   The Court responded: "[B]ut those issues are for down the road, right, as to what the standard of inquiry is, or the scienter requirement. . . .  [T]his motion is this privilege bars this claim regardless of whether the standard is intentional or actual or reckless."  Tr. at 11:3-9 (Court).  KOB 4  replied: "[W]hat you're saying is correct. . . .  [I]n this situation the problem with the way that the pleadings have been structured at this point is that . . . Mr. Bregman has really asserted a negligence standard which is not applicable, given the fact that Mr. Ormrod is a public official."  Tr. at 11:11-22 (Rieder).  The Court then asked: "[B]ut does the proper scienter requirement have any impact under the application of this privilege?"  Tr. at 11:24-12:1 (Court).  KOB 4 replied: "[N]o."  Tr. at 12:2 (Rieder).   KOB 4 then argued that Ormrod is a public official, because "under the first amendment the Court wants to protect people who are

_____

[2]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

performing services that are fundamental to the democracy, including educating children." Tr. at 17:22-25 (Rieder). KOB 4 added that the Court should consider the Police Report in deciding the Motion. <u>See</u> Tr. at 19:2-5 (Rieder).

Ormrod then took the podium. <u>See</u> Tr. at 21:23 (Bregman). The Court asked Ormrod what exhibits it should consider when ruling on the Motion. <u>See</u> Tr. at 27:19-22 (Court). Eventually, Ormrod conceded that the Court could consider the APS Letter. <u>See</u> Tr. at 31:4-5 (Bregman). The Court then asked "in your view Mr. Bregman I can consider the two stories that KOB put out, and then I can also consider the letter from the APS, but not [the] police report," Tr. at 35:20-23 (Court), to which Ormrod replied "that's correct," Tr. at 35:24 (Bregman). Ormrod conceded, however, that the Police Report was authentic. <u>See</u> Tr. at 28:18-19 (Bregman)("I'm not disputing that that police report was created."). At the hearing's conclusion, the Court offered its inclination that the fair report privilege did not apply to KOB 4's story, and, consequently, the Court should deny the Motion. <u>See</u> Tr. at 37:4-8 (Court).

## LAW REGARDING RULE(12)(b)(6)

Rule 12(b)(6) authorizes a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." <u>Mobley v. McCormick</u>, 40 F.3d 337, 340 (10th Cir. 1994). A complaint's sufficiency is a question of law, and, when considering a rule 12(b)(6) motion, a court must accept as true all well-pleaded factual allegations in the complaint, view those allegations in the light most favorable to the non-moving party, and draw all reasonable inferences in the plaintiff's favor. <u>See</u> <u>Tellabs, Inc. v. Makor Issues & Rights, Ltd.</u>, 551 U.S. 308, 322 (2007)("[O]nly if a reasonable person could not draw . . . an inference [of plausibility] from the

alleged facts would the defendant prevail on a motion to dismiss."); Smith v. United States, 561 F.3d 1090, 1098 (10th Cir. 2009)("[F]or purposes of resolving a Rule 12(b)(6) motion, we accept as true all well-pleaded factual allegations in a complaint and view these allegations in the light most favorable to the plaintiff.")(quoting Moore v. Guthrie, 438 F.3d 1036, 1039 (10th Cir. 2006)).

A complaint need not set forth detailed factual allegations, yet a "pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action" is insufficient. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)(citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. at 678. "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atl. Corp v. Twombly, 550 U.S. at 555 (citation omitted).

To survive a motion to dismiss, a plaintiff's complaint must contain sufficient facts that, if assumed to be true, state a claim to relief that is plausible on its face. See Bell Atl. Corp. v. Twombly, 550 U.S. at 570; Mink v. Knox, 613 F.3d 995, 1000 (10th Cir. 2010). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. at 556). "Thus, the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complainant must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." Ridge at Red Hawk, LLC v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007)(emphasis omitted). The United States Court

of Appeals for the Tenth Circuit has stated:

> "[P]lausibility" in this context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs "have not nudged their claims across the line from conceivable to plausible." The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief.

Robbins v. Oklahoma, 519 F.3d 1242, 1247 (10th Cir. 2008)(quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 570)(internal citations omitted). See Glover v. Gartman, 899 F. Supp. 2d 1115, 1131 (D.N.M. 2012)(Browning, J.); Tavasci v. Cambron, No. CIV 16-0461, 2017 WL 3173011, at *14 (D.N.M. 2017)(Browning, J.).

## LAW REGARDING DOCUMENTS OUTSIDE THE PLEADINGS ON A MOTION TO DISMISS

Generally, the sufficiency of a complaint must rest on its contents alone. See Casanova v. Ulibarri, 595 F.3d 1120, 1125 (10th Cir. 2010); Gossett v. Barnhart, 139 F. App'x 24, 24 (10th Cir. 2005)(unpublished)[3]("In ruling on a motion to dismiss, the district court is limited to the

---

[3]Gossett v. Barnhart is an unpublished opinion, but the Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it. See 10th Cir. R. 32.1(A)("Unpublished opinions are not precedential, but may be cited for their persuasive value."). The Tenth Circuit has stated:

> In this circuit, unpublished orders are not binding precedent, . . . and we have generally determined that citation to unpublished opinions is not favored. However, if an unpublished opinion or order has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005). The Court concludes that Gossett v. Barnhart, Carter v. Daniels, 91 F. App'x 83 (10th Cir. 2004)(unpublished), Nard v. City of Okla. City, 153 F. App'x 529 (10th Cir. 2005)(unpublished), Douglas v. Norton, 167 F. App'x 698 (10th Cir. 2006)(unpublished), and Estate of Ricci v. Salt Lake City Corp., 180 F. App'x 810 (10th Cir. 2006)(unpublished), have persuasive value with respect to material issues, and will assist the Court in its disposition of this Memorandum Opinion and Order.

facts pled in the complaint."). Emphasizing this point, the Tenth Circuit, in <u>Carter v. Daniels</u>, 91 F. App'x 83 (10th Cir. 2004)(unpublished), states: "When ruling on a Rule 12(b)(6) motion, the district court must examine only the plaintiff's complaint. The district court must determine if the complaint alone is sufficient to state a claim; the district court cannot review matters outside of the complaint." 91 F. App'x at 85. There are three limited exceptions to this general principle: (i) documents that the complaint incorporates by reference, <u>see</u> <u>Tellabs, Inc. v. Makor Issues & Rights, Ltd.</u>, 551 U.S. 308, 322 (2007); (ii) "documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity," <u>Jacobsen v. Deseret Book Co.</u>, 287 F.3d at 941; and (iii) "matters of which a court may take judicial notice," <u>Tellabs, Inc. v. Makor Issues & Rights, Ltd.</u>, 551 U.S. at 322. "[T]he court is permitted to take judicial notice of its own files and records, as well as facts which are a matter of public record." <u>Van Woudenberg v. Gibson</u>, 211 F.3d 560, 568 (10th Cir. 2000), <u>abrogated on other grounds by</u> <u>McGregor v. Gibson</u>, 248 F.3d 946, 955 (10th Cir. 2001). In <u>Gee v. Pacheco</u>, 627 F.3d 1178 (10th Cir. 2010), the defendants "supported their motion with numerous documents, and the district court cited portions of those motions in granting the [motion to dismiss]." 627 F.3d at 1186. The Tenth Circuit held that "[s]uch reliance was improper" and that, even if "the district court did not err initially in reviewing the materials, the court improperly relied on them to refute Mr. Gee's factual assertions and effectively convert the motion to one for summary judgment." <u>Gee v. Pacheco</u>, 627 F.3d at 1186-87. In other cases, the Tenth Circuit has emphasized that, "[b]ecause the district court considered facts outside of the complaint, however, it is clear that the district court dismissed the claim under Rule 56(c) and not Rule 12(b)(6)." <u>Nard v. City of Okla. City</u>, 153 F. App'x 529, 534 n.4 (10th Cir. 2005)(unpublished). In <u>Douglas v. Norton</u>, 167 F. App'x 698 (10th Cir. 2006)(unpublished), the

Tenth Circuit addressed an untimely filed charge with the Equal Employment Opportunity Commission -- which the court analogized to a statute of limitations -- and concluded that, because the requirement was not jurisdictional, the district court should have analyzed the question under rule 12(b)(6), and "because the district court considered evidentiary materials outside of Douglas' complaint, it should have treated Norton's motion as a motion for summary judgment." 167 F. App'x at 704-05.

The Court has previously ruled that, when determining whether a statute of limitations had been tolled in an action alleging fraud and seeking subrogation from a defendant, the Court may not use interviews and letters attached to a motion to dismiss, which evidence that a plaintiff was aware of the defendant's alleged fraud before the statutory period expired, in the Court's ruling. See Great Am. Co. v. Crabtree, No. CIV 11-1129, 2012 WL 3656500, at *3, **22-23 (D.N.M. Aug. 23, 2012)(Browning, J.). The Court determined that the documents did not fall within any of the Tenth Circuit's exceptions to the general rule that a complaint must rest on the sufficiency of its contents alone, as the complaint did not incorporate the documents by reference, or refer to the documents. See 2012 WL 3656500, at **22-23; Mocek v. City of Albuquerque, No. CIV 11-1009, 2013 WL 312881, at *50 (D.N.M. 2013)(Browning, J.)(refusing to consider statements that were not "central to [the plaintiff's] claims").

On the other hand, in a securities class-action, the Court has found that a defendant's operating certification, to which plaintiffs refer in their complaint, and which is central to whether the plaintiffs' adequately alleged a loss, falls within an exception to the general rule, and the Court may consider the operating certification when ruling on the defendant's motion to dismiss without converting the motion into one for summary judgment. See Genesee Cty Emps.' Retirement Sys. v. Thornburg Mortg. Secs. Trust 2006-3, 825 F. Supp. 2d 1082, 1150-

51 (D.N.M. 2011)(Browning, J.); <u>Mata v. Anderson</u>, 760 F. Supp. 2d 1068, 1101 (D.N.M. 2009)(Browning, J.)(relying on documents outside of the complaint because they were "documents that a court can appropriately view as either part of the public record, or as documents upon which the Complaint relies, and the authenticity of which is not in dispute").

## LAW REGARDING DIVERSITY JURISDICTION AND ERIE

Under <u>Erie Railroad Co. v. Tompkins</u>, 304 U.S. 64 (1938)("<u>Erie</u>"), a federal district court sitting in diversity applies "state law with the objective of obtaining the result that would be reached in state court." <u>Butt v. Bank of Am., N.A.</u>, 477 F.3d 1171, 1179 (10th Cir. 2007). <u>Accord</u> <u>Mem. Hosp. v. Healthcare Realty Trust Inc.</u>, 509 F.3d 1225, 1229 (10th Cir. 2007). The Court has held that if a district court exercising diversity jurisdiction cannot find a Supreme Court of New Mexico "opinion that [governs] a particular area of substantive law . . . [the district court] must . . . predict how the Supreme Court of New Mexico would [rule]." <u>Guidance Endodontics, LLC v. Dentsply Int'l., Inc.</u>, 708 F. Supp. 2d 1209, 1224-25 (D.N.M. 2010)(Browning, J.). "Just as a court engaging in statutory interpretation must always begin with the statute's text, a court formulating an <u>Erie</u> prediction should look first to the words of the state supreme court." <u>Peña v. Greffet</u>, 110 F. Supp. 3d 1103, 1132 (D.N.M. 2015)(Browning, J.).[4] If the Court finds only an opinion from the Court of Appeals of New

---

[4]In performing its <u>Erie</u>-mandated duty to predict what a state supreme court would do if faced with a case, <u>see</u> <u>Comm'r v. Estate of Bosch</u>, 387 U.S. 456 (1987), a federal court may sometimes contradict the state supreme court's own precedent if the federal court concludes that the state supreme court would, given the opportunity, overrule its earlier holding, <u>see</u> <u>Anderson Living Trust v. WPX Energy Prod., LLC</u>, 27 F. Supp. 3d at 1247 n.30. Courts should, obviously, be reticent to formulate an <u>Erie</u> prediction that conflicts with state-court precedent; even if the prediction turns out to be correct, such predictions produce disparate results between cases filed in state and federal courts, as the old state supreme court precedent usually binds state trial courts. The factors to which a federal court should look before making an <u>Erie</u> prediction that a state supreme court will overrule its prior precedent vary depending upon the case, but

Mexico, while "certainly [the Court] may and will consider the Court of Appeal[s'] decision in making its determination, the Court is not bound by the Court of Appeal[s'] decision in the same way that it would be bound by a Supreme Court decision."  Mosley v. Titus, 762 F. Supp. 2d 1298, 1332 (D.N.M. 2010)(Browning, J.)(noting that, where the only opinion on point is "from the Court of Appeals, [] the Court's task, as a federal district court sitting in this district, is to predict what the Supreme Court of New Mexico would do if the case were presented to it")(citing Wade v. EMCASCO Ins. Co., 483 F.3d 657, 666 (10th Cir. 2007)(explaining that, "[w]here no controlling state decision exists, the federal court must attempt to predict what the state's highest court would do," and that, "[i]n doing so, it may seek guidance from decisions rendered by lower courts in the relevant state")).[5]  The Court may also rely on Tenth Circuit

_____

some consistent ones include: (i) the age of the state supreme court decision from which the federal court is considering departing -- the younger the state case is, the less likely it is that departure is warranted; (ii) the amount of doctrinal reliance that the state courts -- especially the state supreme court -- have placed on the state decision from which the federal court is considering departing; (iii) apparent shifts away from the doctrine that the state decision articulates, especially if the state supreme court has explicitly called an older case's holding into question; (iv) changes in the composition of the state supreme court, especially if mostly dissenting justices from the earlier state decision remain on the court; and (v) the decision's patent illogic or its inapplicability to modern times.  See Peña v. Greffet, 110 F. Supp. 3d at 1132 n.17.  In short, a state supreme court case that a federal court Erie predicts will be overruled is likely to be very old, neglected by subsequent state-court cases -- perhaps because it is in a dusty corner of the common law which does not get much attention or have much application -- and clearly wrong.

[5]The Supreme Court of the United States has addressed what the federal courts may use when there is not a decision on point from the state's highest court:

The highest state court is the final authority on state law, but it is still the duty of the federal courts, where the state law supplies the rule of decision, to ascertain and apply that law even though it has not be expounded by the highest court of the State.  An intermediate state court in declaring and applying the state law is acting as an organ of the State and its determination, in the absence of more convincing evidence of what the state law is, should be followed by a federal court in deciding a state question.  We have declared that principle in *West v.*

- 14 -

decisions interpreting New Mexico law. See Anderson Living Trust v. WPX Energy Prod., LLC, 27 F. Supp. 3d at 1243 & n.30.[6] Ultimately, "the Court's task is to predict what the state

_American Telephone and Telegraph Co._, 311 U.S. 223 (1940), decided this day. It is true that in that case an intermediate appellate court of the State had determined the immediate question as between the same parties in a prior suit, and the highest state court had refused to review the lower court's decision, but we set forth the broader principle as applicable to the decision of an intermediate court, in the absence of a decision by the highest court, whether the question is one of statute or common law.

. . . .

We have held that the decision of the Supreme Court upon the construction of a state statute should be followed in the absence of an expression of a countervailing view by the State's highest court, and we think that the decisions of the Court of Chancery [the New Jersey trial court] are entitled to like respect as announcing the law of the State.

. . . .

The question has practical aspects of great importance in the proper administration of justice in the federal courts. It is inadmissible that there should be one rule of state law for litigants in the state courts and another rule for litigants who bring the same question before the federal courts owing to the circumstance of diversity of citizenship. In the absence of any contrary showing, the rule [set forth by two New Jersey trial courts, but no appellate courts] appears to be the one which would be applied in litigation in the state court, and whether believed to be sound or unsound, it should have been followed by the Circuit Court of Appeals.

Fid. Union Trust Co. v. Field, 311 U.S. 169, 177-80 (1940)(footnotes and citations omitted). The Supreme Court has softened this position over the years; federal courts are no longer bound by state trial or intermediate court opinions, but "should attribute [them] some weight . . . where the highest court of the State has not spoken on the point." Comm'r v. Estate of Bosch, 387 U.S. at 465 (citing King v. Order of United Commercial Travelers, 333 U.S. 153, 159 (1948)). See 17A James Wm. Moore et al., Moore's Federal Practice § 124.20 (3d ed. 1999)("Moore's")("Decisions of intermediate state appellate courts usually must be followed . . . [and] federal courts should give some weight to state trial courts decisions.")(emphasis and title case omitted).

[6]In determining the proper weight to accord Tenth Circuit precedent interpreting New Mexico law, the Court must balance the need for uniformity between federal court and state

court interpretations of state law with the need for uniformity among federal judges. If the Court adheres too rigidly to Tenth Circuit case law, ignoring changes undergone by a state's law in the ensuing years, then parties litigating state-law claims will be subject to a different body of substantive law, depending on whether they litigate in state court or federal court. This result frustrates the purpose of Erie, which held that federal courts must apply state court interpretations of state law, rather than their own, in part so that parties achieve a consistent result regardless of the forum. This consideration pulls the Court toward according Tenth Circuit precedent less weight, and according state court decisions issued in the ensuing years more weight. On the other hand, when the state law is unclear, it is desirable for there to at least be uniformity among federal judges as to its proper interpretation. Otherwise, different federal judges within the same circuit -- or even the same district, as district courts' decisions are not binding, even upon themselves -- would be free to adopt differing interpretations of a state's law. This consideration pulls the Court towards a stronger respect for vertical stare decisis, because a Tenth Circuit decision on point -- regardless whether it accurately reflects state law -- at least provides consistency at the federal level, so long as federal district judges are required to follow it.

The Court must decide how to weigh Tenth Circuit case law against more-recent state court decisions, choosing a point on the spectrum between the two extremes: rigidly adhering to Tenth Circuit precedent unless there is intervening case law directly on point from the state's highest court, on one end; and independently interpreting the state law, regarding the Tenth Circuit precedent as no more than persuasive authority, on the other. In striking this balance, the Court notes that it is generally more concerned about systemic inconsistency between the federal courts and the state courts than it is about inconsistency among federal judges. Judges, even those within a jurisdiction with ostensibly identical governing law, sometimes interpret and apply the law differently from one another; this inconsistency is part and parcel of a common-law judicial system. More importantly, litigants seeking to use forum selection to gain a substantive legal advantage cannot easily manipulate such inconsistency: cases are assigned randomly to district judges in this and many federal districts; and, regardless, litigants cannot know for certain how a given judge will interpret the state law, even if they could determine the identity of the judge pre-filing or pre-removal. All litigants know in advance is that whomever federal district judge they are assigned will look to the entirety of the state's common law in making his or her determination -- the same as a state judge would. Systemic inconsistency between the federal courts and state courts, on the other hand, not only threatens the principles of federalism, but litigants may more easily manipulate the inconsistency. When the Tenth Circuit issues an opinion interpreting state law, and the state courts subsequently shift away from that interpretation, litigants -- if the district courts strictly adhere to the Tenth Circuit opinion -- have a definite substantive advantage in choosing the federal forum over the state forum, or vice versa.

The Court further notes that district courts may be in a better position than the Tenth Circuit to be responsive to changes in state law. Tenth Circuit decisions interpreting a particular state's law on a specific issue are further apart in time than the collective district courts' decisions are. More importantly, the Tenth Circuit does not typically address such issues with the frequency that the state's courts themselves do. As such, Tenth Circuit precedent can lag behind state law developments -- developments that the district courts may be nimble enough to

perceive and adopt. Additionally, much of the benefit of having a consistent Tenth Circuit-wide interpretation of a particular state's law is wasted. Other than Oklahoma, every state encompassed by the Tenth Circuit contains only one federal judicial district, and there is relatively little need for federal judges in Wyoming and Kansas to have a uniform body of New Mexico law to which to look. Last, the Court notes, respectfully, that district courts may be in a better position than the Tenth Circuit to develop expertise on the state law of the state in which they sit. Every federal judicial district in the nation, except the District of Wyoming, covers at most one state. It is perhaps a more workable design for each district court to keep track of legal developments in the state law of its own state than it is for the Tenth Circuit to monitor separate legal developments in eight states. The Tenth Circuit used to follow this rationale in applying a clearly erroneous standard of review to district judge decisions of state law with no controlling state Supreme Court precedent. See Weiss v. United States, 787 F.2d 518, 525 (10th Cir. 1986); See Rawson v. Sears, Roebuck, & Co., 822 F.2d 908, 923 (10th Cir. 1987)(McKay, J., dissenting)(collecting cases). Since the mid-1980s, however, the Tenth Circuit has abandoned that rationale and applied a de novo standard of review to district judge decisions applying state law with no governing state Supreme Court precedent. See Rawson v. Sears, Roebuck, & Co., 822 F.2d at 908. See also id. at 923 (McKay, J., dissenting)(noting that the majority had abandoned the "sanctified" clearly erroneous standard or the "so-called local-judge rule" in its analysis). The Court regrets the Tenth Circuit's retreat from the clearly erroneous standard.

Having outlined the relevant considerations, the Court thinks the proper stance on vertical stare decisis in the context of federal court interpretations of state law is as follows: the Tenth Circuit's cases are binding as to their precise holding -- what the state law was on the day the opinion was published -- but lack the positive precedential force that its cases interpreting a federal statute or the Constitution of the United States of America possess. A district court considering a state law issue after the publication of a Tenth Circuit opinion on point may not come to a contrary conclusion based only on state court cases available to and considered by the Tenth Circuit, but it may come to such a conclusion based on intervening state court cases.

When interpreting state law, the Tenth Circuit does not and cannot issue a case holding that *x* is the law in New Mexico; it holds that the proper interpretation of New Mexico law, at the time the opinion is released, is *x*. Its holdings are descriptive, not prescriptive -- interpretive, not normative. Because federal judicial opinions lack independent substantive force on state law issues, but possess such force regarding federal law issues, the Court thinks the following is not an unfair summary of the judicial interpretive process: (i) when interpreting federal law, the federal appellate courts consider the existing body of law, and then issue a holding that both reflects and influences the body of law; that holding subsequently becomes a part of the body of law; but (ii) when interpreting state law, the federal appellate courts consider the existing body of law, and then issue a holding that only reflects the body of law; that holding does not subsequently become a part of the body of law. The federal district courts are bound to conclude that the Tenth Circuit's reflection of the then-existing body of law was accurate. The question is whether they should build a doctrine atop the case and use the existence of the Tenth Circuit's case to avoid any responsibility to independently consider the whole body of state law that exists when the time comes that diversity litigants raise the issue in their courtrooms. Giving such effect to the Tenth Circuit's interpretations of state law is at tension with Erie, giving

independent substantive effect to federal judicial decisions -- i.e., applying federal law -- in a case brought in diversity.

Erie's purpose is well-known and simple, and the Court should not complicate it beyond recognition: it is that the same substantive law governs litigants' cases regardless whether they are brought in a federal or state forum. For simplicity's sake, most courts have settled on the formulation that "the federal court must attempt to predict how the states' highest court would rule if confronted with the issue." Moore's § 124.22[3] (citing Comm'r v. Estate of Bosch, 387 U.S. at 465 ("[A]n intermediate appellate state court [decision] is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.")(citation and internal quotation marks omitted). This formulation may not be the most precise if the goal is to ensure identical outcomes in state and federal court -- the Honorable Milton I. Shadur, United States District Judge, looks to state procedural rules to determine in which state appellate circuit the suit would have been filed were it not in federal court, and then applies the state law as that circuit court interprets it, see Abbott Laboratories v. Granite State Ins. Co., 573 F. Supp. 193, 196-200 (N.D. Ill. 1983)(noting that the approach of predicting the state supreme court's holdings will often lead to litigants obtaining a different result in federal court than they would in state court, where only the law of the state circuit in which they filed -- and certainly not nonexistent, speculative state supreme court law -- governs) -- but it is a workable solution that has achieved consensus. See Allstate Ins. Co. v. Menards, Inc., 285 F.3d 630, 637 (7th Cir. 2002)("[W]e adhere today to the general rule, articulated and applied throughout the United States, that, in determining the content of state law, the federal courts must assume the perspective of the highest court in that state and attempt to ascertain the governing substantive law on the point in question."). This formulation, built out of ease-of-use, does not relieve courts of their Supreme Court-mandated obligation to consider state appellate and trial court decisions. To the contrary, even non-judicial writings by influential authors, statements by state supreme court justices, the closeness of the vote on a prior case addressing the issue, and personnel changes on the court -- considerations that would never inform a federal court's analysis of federal law -- may validly come into play. The question is whether the district courts must abdicate, across-the-board, the "would decide" aspect of the Erie analysis to their parent appellate courts when a United States Court of Appeals has declared an interpretation of state law.

The Erie doctrine results in federal cases that interpret state law withering with time. While cases interpreting federal law become more powerful over time -- forming the groundwork for doctrines, growing upward from one application (Congress may create a national bank) to many (Congress may set quotas on wheat-growing for personal consumption), expanding outward from the general (states must grant criminal jury trials) to the specific (the jury need not be twelve people, nor must it be unanimous) -- federal cases interpreting state law often become stale. New state court cases -- even when not directly rebuking the federal court's statement of law -- alter the common-law legal landscape with their dicta, their insinuations, and their tone. The Supreme Court, which picks its cases sparingly and for maximum effect, almost never grants certiorari to resolve issues of state law.

The Court's views on Erie, of course, mean little if the Tenth Circuit does not agree. In Wankier v. Crown Equipment Corp., the Tenth Circuit said that,

[w]here no controlling state decision exists, the federal court must attempt to predict what the state's highest court would do. In performing this ventriloquial function, however, the federal court is bound by ordinary principles of *stare decisis*. Thus, when a panel of this Court has rendered a decision interpreting state law, that interpretation is binding on district courts in this circuit, and on subsequent panels of this Court, unless an intervening decision of the state's highest court has resolved the issue.

Wankier v. Crown Equip. Corp., 353 F.3d 862, 866 (10th Cir. 2003)(McConnell, J.). From this passage, it seems clear that the Tenth Circuit permits a district court to deviate from its view of state law only on the basis of a subsequent case "of the state's highest court." The American Heritage Dictionary of the English Language 1402 (William Morris ed., New College ed. 1976)(defining "unless" as "[e]xcept on the condition that; except under the circumstances that"). A more aggressive reading of the passage -- namely the requirement that the intervening case "resolved the issue" -- might additionally compel the determination that any intervening case law must definitively and directly contradict the Tenth Circuit interpretation to be considered "intervening."

It is difficult to know whether Judge McConnell's limitation of "intervening decision" to cases from the highest state court was an oversight or intentional. Most of the Tenth Circuit's previous formulations of this rule have defined intervening decisions inclusively as all subsequent decisions of "that state's courts," a term which seems to include trial and intermediate appellate courts. Even Koch v. Koch Industries, Inc., 203 F.3d 1202, 1231 (10th Cir. 2000), the primary authority upon which Wankier v. Crown Equipment Corp. relies, uses the more inclusive definition. Indeed, Wankier v. Crown Equipment Corp. quotes its relevant passage:

In the absence of intervening Utah authority indicating that a plaintiff is not required to prove a safer, feasible alternative design, we are bound to follow the rule of *Allen* [v. Minnstar, Inc., 8 F.3d 1470 (10th Cir. 1993), a Tenth Circuit case interpreting an issue of Utah law], as was the district court. "Following the doctrine of stare decisis, one panel of this court must follow a prior panel's interpretation of state law, absent a supervening declaration to the contrary by that state's courts or an intervening change in the state's law." Koch v. Koch Indus., Inc., 203 F.3d at 1231.

Wankier v. Crown Equip. Corp., 353 F.3d at 867.

Whether the decision to limit the intervening authority a district court can consider was intentional, the Tenth Circuit has noted it and run with it. In Kokins v. Teleflex, Inc., the Tenth Circuit, quoting Wankier v. Crown Equipment Corp., refuses to consider an opinion from the Court of Appeals of Colorado holding directly the opposite of an earlier Tenth Circuit interpretation of Colorado law. See Kokins v. Teleflex, Inc., 621 F.3d 1290, 1297 (10th Cir. 2010)(Holmes, J.)("[T]he Colorado Court of Appeals decided *Biosera*[, Inc. v. Forma Scientific, Inc., 941 P.2d 284 (Colo. Ct. App. 1998)], so it is not an 'intervening decision of the state's

supreme court would do." <u>Wade v. EMCASCO Ins. Co.</u>, 483 F.3d at 666. <u>Accord</u> <u>Mosley v. Titus</u>, 762 F. Supp. 2d at 1332 (citation omitted); <u>Rimbert v. Eli Lilly & Co.</u>, 577 F. Supp. 2d 1174, 1188-89 (D.N.M. 2008)(Browning, J.)(quoting <u>Wade v. EMCASCO Ins. Co.</u>, 483 F.3d at 665-66). <u>See</u> <u>in re Santa Fe Natural Tobacco Company Marketing & Sales Practices and Products Liability Litigation</u>, No. MD 16-2695, 2017 WL 6550897, at *27 (D.N.M. 2017)(Browning, J.).

## LAW REGARDING DEFAMATION

Over fifty years ago, in <u>New York Times v. Sullivan</u>, 376 U.S. 254 (1964), the Supreme Court declared that state law defamation claims must be measured by standards that satisfy the First Amendment to the Constitution of the United States of America, which permits no law "abridg[ing] the freedom of speech, and of the press." <u>N.Y. Times v. Sullivan</u>, 376 U.S. at 269. That holding is grounded in "a profound national commitment to the principle that debate on public issues should be unlimited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." 376 U.S. at 270. The protection of speech on issues of public concern extends even to false speech, so that the First Amendment's "freedom of expression . . . ha[s] the 'breathing space'" it needs to survive. 376 U.S. at 271-72. <u>See</u> <u>Gertz v. Robert Welch, Inc.</u>, 418 U.S. 323, 341 (1974)("The

_____

*highest court.*'")(emphasis in original)(quoting <u>Wankier v. Crown Equip. Corp.</u>, 353 F.3d at 866).

The Tenth Circuit has set forth a stringent restriction on its district courts' ability to independently administer the <u>Erie</u> doctrine. More importantly, the Tenth Circuit's view may be at tension with the above-quoted Supreme Court precedent, as well as its own prior case law. <u>Moore's</u> lists the Tenth Circuit as having been, at one time, a "court[ that] hold[s] that a prior federal appellate decision [interpreting state law] is persuasive." <u>Moore's</u> § 124.22[4] (citing <u>State Farm Mut. Auto. Ins. Co. v. Travelers Indem. Co.</u>, 433 F.2d 311, 312 (10th Cir. 1970)). Still, the Court is bound to abide by the Tenth Circuit's interpretation of <u>Erie</u>.

First Amendment requires that we protect some falsehood in order to protect speech that matters.").

"[T]here is no federal cause of action for defamation." Bartel v. FAA, 725 F.2d 1403, 1405 n.2 (D.C. Cir. 1984). See Estate of Ricci v. Salt Lake City Corp., 180 F. App'x 810, 813 (10th Cir. 2006)(unpublished)("Further, [the plaintiff] has no § 1983 cause of action for defamation."); DeCamp v. Douglas Cty. Franklin Grand Jury, 978 F.2d 1047, 1050 (8th Cir. 1992). The Court may only hear a state law defamation cause-of-action through exercising supplemental jurisdiction under 28 U.S.C. § 1367, see Fisher v. Lynch, 531 F. Supp. 2d 1253, 1271 (D. Kan. 2008)(Vratil, J.)("[U]nder Section 1367(a) . . . the Court may exercise supplemental jurisdiction over the [state law] defamation claim."), or through its diversity jurisdiction under 28 U.S.C. § 1332, see Cleary Bldg. Corp. v. David A. Dame, Inc., 674 F. Supp. 2d 1257, 1260 (D. Colo. 2009)(Arguello, J.)("Plaintiff also alleges claims of [state] common law . . . defamation . . . . Jurisdiction is proper pursuant to . . . 28 U.S.C. § 1332 . . . .").

Under New Mexico law, a prima-facie case for defamation includes: (i) a published communication by the defendant; (ii) the communication includes an asserted statement of fact; (iii) the communication was concerning the plaintiff; (iv) the statement of fact is false; (v) the communication was defamatory; (vi) the persons receiving the communication understood it to be defamatory; (vii) the defendant knew the communication was false or negligently failed to recognize that it was false, or acted with malice; (viii) the communication caused actual injury to the plaintiff's reputation; and (ix) the defendant abused its privilege to publish the communication. See N.M. Rules Ann., Civ. UJI 13-1002(B).[7] See also Newberry v. Allied

---

[7]The Supreme Court of New Mexico's adoption of uniform jury instructions proposed by standing committees of the court establishes a presumption that the instructions are correct

Stores, Inc., 1989-NMSC-024, ¶ 16, 773 P.2d 1231, 1236 ("Generally, the elements of a defamation action include: a defamatory communication, published by the defendant, to a third person, of an asserted fact, of and concerning the plaintiff, and proximately causing actual injury to the plaintiff.")(citing N.M. Rules Ann., Civ. U.J.I. 13-1002); Heyward v. Credit Union Times, 913 F. Supp. 2d 1165, 1185 (D.N.M. 2012)(Browning, J.).

       1.      **Statement of Fact.**

The Supreme Court has held that, under the First Amendment, a statement can serve as a basis for a defamation claim only if it is a statement of fact and not of opinion:

> Under the First Amendment there is no such thing as a false idea. However pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries but on the competition of other ideas. But there is no constitutional value in false statements of fact. Neither the intentional lie nor the careless error materially advances society's interest in "uninhibited, robust, and wide-open" debate on public issues. New York Times Co. v. Sullivan, 376 U.S., [sic] at 270 . . . . They belong to that category of utterances which "are no essential part of any exposition of ideas, and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality." Chaplinsky v. New Hampshire, 315 U.S. 568, 572 (1942).

Gertz v. Robert Welch, Inc., 418 U.S. at 339-40. The Supreme Court of New Mexico, in Marchiondo v. Brown, 1982-NMSC-076, 649 P.2d 462, held that the court is to determine as a matter of law whether the alleged defamatory statement is or contains a statement of fact:

> Where the statements are unambiguously fact or opinion, . . . the court determines as a matter of law whether the statements are fact or opinion. However, where the alleged defamatory remarks could be determined either as fact or opinion, and the court cannot say as a matter of law that the statements were not understood as fact, there is a triable issue of fact for the jury.

Marchiondo v. Brown, 1982-NMSC-076,¶ 58, 649 P.2d at 472.

---

statements of law. See State of New Mexico v. Wilson, 1994-NMSC-009, ¶ 5, 867 P.2d 1175, 1178.

Whether a statement asserts a fact or opinion turns on whether the statement is verifiable -- i.e., whether it "is sufficiently factual to be susceptible of being proved true or false." Milkovich v. Lorain Journal Co., 497 U.S. 1, 21 (1990). See Moore v. Sun Publ'g Corp., 1994-NMCA-104, ¶ 23, 881 P.2d 735, 742 ("New Mexico appears to be among the states requiring verifiability as the controlling element in determining whether a statement is fact or opinion. Under this analysis, opinions are statements which cannot be proved or disproved.")(citations and internal quotation marks omitted).[8] Opinions may be actionable as defamatory where they implicitly contain an assertion of fact. See Schwartz v. Am. Coll. of Emergency Physicians, 215 F.3d 1140, 1145 (10th Cir. 2000)("Certain expressions of opinion implicitly contain an assertion of objective fact, and such statements are not exempt from a defamation claim.")(citing Milkovich v. Lorain Journal Co., 497 U.S. at 18-19). The Supreme Court has recognized that simply couching statements in terms of an opinion does not dispel its implications of a false assertion of fact. See Milkovich v. Lorain Journal Co., 497 U.S. at 19 ("It would be destructive of the law of libel if a writer could escape liability for accusations of defamatory conduct simply by using, explicitly or implicitly, the words 'I think.'")(quoting Cianci v. New Times Publ'g Co., 639 F.2d 54, 64 (2d Cir. 1980)(Friendly, J.)(alterations omitted)).

The Supreme Court of New Mexico, in Marchiondo v. Brown, provided guidance on how to distinguish between fact and opinion: "The crucial difference between statement of fact and

_____

[8]To predict how the state's highest court would rule, the federal court "may seek guidance from decisions rendered by lower courts in the relevant state, appellate decisions in other states with similar legal principles, district court decisions interpreting the law of the state in question, and 'the general weight and trend of authority' in the relevant area of law." Wade v. Emcasco Ins. Co., 483 F.3d at 666 (citations and internal quotation marks omitted). Because the New Mexico Supreme Court has cited Moore v. Sun Publ'g Corp. with approval in two recent defamation cases -- Fikes v. Furst, 2003-NMSC-033, ¶ 17, 81 P.3d 545, 550-51, and Smith v. Durden, 2012-NMSC-010, ¶ 32, 276 P.3d 943 -- the Court concludes that the Supreme Court of New Mexico, if presented with the same case, would rule based on Moore v. Sun Publ'g Corp.

opinion depends upon whether ordinary persons hearing or reading the matter complained of would be likely to understand it as an expression of the speaker's or writer's opinion, or as a statement of existing fact." 1982-NMSC-076, ¶ 57, 649 P.2d at 472 (quoting Mashburn v. Collin, 355 So. 2d 879, 885 (La. 1977)). The Supreme Court of New Mexico has illustrated how a court should evaluate whether the ordinary person may understand the expression to imply a statement of fact:

> In Kutz v. Independent Pub. Co., Inc., 97 N.M. 243, 638 P.2d 1088 (Ct. App. 1981), the court set out the criteria for determining as a matter of law, when a statement may be said to be opinion or fact. "If the material as a whole contains full disclosure of the facts upon which the publisher's opinion is based and which permits the reader to reach his own opinion, the court in most instances will be required to hold that it is a statement of opinion, and absolutely privileged." Id. at 245, 638 P.2d at 1090 (citation omitted). Conversely, where there are implications in the statement "that the writer has private, underlying knowledge to substantiate his comments about plaintiff," and such knowledge implies the existence of defamatory facts, the statement is deemed to be factual and not privileged. Id. at 246, 638 P.2d at 1091.

Marchiondo v. Brown, 1982-NMSC-076, ¶ 56, 649 P.2d at 472 (alterations omitted). Accord Mendoza v. Gallup Indep. Co., 1988-NMCA-073, ¶ 10, 764 P.2d at 495 ("[I]f the material, as a whole, fully discloses the facts upon which the opinion is based and permits the reader to reach [the reader's] own opinion, the statement is generally an opinion rather than an assertion of fact, and is absolutely protected."). See Heyward v. Credit Union Times, 913 F. Supp. 2d at 1187.

### 2.    Statement Concerning the Plaintiff.

"The communication is concerning the plaintiff if the person to whom it was communicated reasonably understood that it was intended to refer to the plaintiff." N.M. Rules Ann., Civ. U.J.I. 13-1005. "There must be evidence showing that the attack was read as specifically directed at the plaintiff." Rosenblatt v. Baer, 383 U.S. 75, 81 (1966). In New York Times Co. v. Sullivan, the Supreme Court held that the alleged defamatory advertisement could

not reasonably be read to be "of and concerning" the plaintiff, the police commissioner, because "[t]here was no reference to respondent in the advertisement, by name or official position." 376 U.S. at 288. The Supreme Court noted that the advertisement contained two assertions concerning police and police functions, but stated: "Although the statements may be taken as referring to the police, they did not on their face make even an oblique reference to respondent as an individual." 376 U.S. at 289. The Supreme Court concluded: "[D]espite the ingenuity of the arguments which would attach the significance to the word 'They,' it is plain that these statements could not reasonably be read as accusing respondent of personal involvement in the acts in question." 376 U.S. at 288-89.

If a defendant publishes a defamatory communication concerning a group of persons, the defendant may be liable to an individual member if the context of the publication reasonably gives rise to the inference that the article is referencing the individual member. See Restatement (Second) of Torts § 564A ("One who publishes defamatory matter concerning a group or class of persons is subject to liability to an individual member of it if, but only if, . . . the circumstances of publication reasonably give rise to the conclusion that there is particular reference to the member.").[9] See Heyward v. Credit Union Times, 913 F. Supp. 2d at 1187.

### 3. The Asserted Statement of Fact is False.

To support a claim for defamation, the asserted statement of fact must be false in a material way; insignificant inaccuracies are insufficient. See N.M. Rules Ann., Civ. U.J.I. 13-

---

[9]New Mexico courts often look to the law as stated in the Restatement (Second) of Torts for guidance on tort law. See Schmitz v. Smentowski, 1990-NMSC-002, ¶ 49, 785 P.2d 726, 736 ("We have . . . been very willing to adopt the view of the Restatement of Torts to assist our development of new tort areas."); Montanez v. Cass, 1975-NMCA-142, ¶ 46, 546 P.2d 1189, 1195 ("It has long been the policy of our courts to follow in the footsteps of the Restatement of Torts, 2d."), rev'd on other grounds New Mexico Elec. Serv. Co. v. Montanez, 1976-NMSC-028, ¶ 19, 551 P.2d 634, 638.

1006 ("To support a claim for defamation, the communication must be false. One or more statements of fact in the communication must be false in a material way. Insignificant inaccuracies of expression are not sufficient."). The Supreme Court has provided guidance:

> Minor inaccuracies do not amount to falsity so long as the substance, the gist, the sting, of the libelous charge be justified. Put another way, the statement is not considered false unless it would have a different effect on the mind of the reader from that which the pleaded truth would have produced.

Masson v. New Yorker Magazine, Inc., 501 U.S. 496, 516-17 (1991)(citations omitted)(internal quotation marks omitted). See Heyward v. Credit Union Times, 913 F. Supp. 2d at 1188.

### 4. The Communication is Defamatory.

A statement is not defamatory because it is merely unflattering of the plaintiff. See Robert D. Sack, Sack on Defamation: Libel, Slander and Related Problems § 2.4.1 (4th ed. 2011)("There is common agreement that a communication that is merely unflattering, annoying, irksome, or embarrassing, or that hurts the plaintiff's feelings, without more, is not actionable."). A defamatory communication is a communication that tends to expose the plaintiff to contempt, to harm the plaintiff's reputation, or to discourage others from associating or dealing with the plaintiff. See N.M. Rules Ann., Civ. U.J.I. 13-1007; Colbert v. Journal Publ'g Co., 1914-NMSC-042, ¶ 18, 142 P. 146, 149 ("Any false and malicious writing published of another is libelous . . . when its tendency is to render him contemptible or ridiculous in public estimation, or expose him to public hatred or contempt, or hinder virtuous men from associating with him.").

"New Mexico cases support recognizing an action for defamation based on implication." Moore v. Sun Publ'g Corp., 1994-NMCA-104, ¶ 19, 881 P.2d at 741. "The theory of defamation by implication recognizes that the reputational injury caused by a communication may result not

from what is said but from what is implied." Moore v. Sun Publ'g Corp., 1994-NMCA-104,

¶ 19, 881 P.2d at 741. The Court of Appeals of New Mexico endorsed a test for defamation by

implication that the United States Court of Appeals for the District of Columbia Circuit has

stated:

> The court must first examine what defamatory inferences might reasonably be
> drawn from a materially true communication, and then evaluate whether the
> author or broadcaster has done something beyond the mere reporting of true facts
> to suggest that the author or broadcaster intends or endorses the inference. We
> emphasize that the tortious element is provided by the affirmative conduct of the
> author or broadcaster, although it is immaterial for purposes of finding
> defamatory meaning whether the author or broadcaster actually intends or
> endorses the defamatory inference.

Moore v. Sun Publ'g Corp., 1994-NMCA-104, ¶ 20, 881 P.2d at 741 (quoting White v. Fraternal

Order of Police, 909 F.2d 512, 520 (D.C. Cir. 1990))(alterations omitted). In determining

whether a statement may be defamatory by implication, the statement must be analyzed, in both

the "immediate context . . . [and] the broader social context into which the statement fits." Fikes

v. Furst, 2003-NMSC-033, ¶ 18, 81 P.3d 545, 551.

In Moore v. Sun Publishing Corp., the plaintiff contended that a publication defamed

him, because the publication described a "disagreement over policy, rather than making any

particular, direct statement about [the plaintiff's] fitness," and the Court of Appeals of New

Mexico concluded that its plain and obvious meaning was not defamatory. 1994-NMCA-104,

¶ 16, 881 P.2d at 740. The Court of Appeals of New Mexico noted that the facts which the

plaintiff argued defamed him were "not explicitly stated in the notice." 1994-NMCA-104, ¶ 17,

881 P.2d at 740. The Court of Appeals of New Mexico held, however, that, although the plain

and obvious meaning is not defamatory, the statements in the notice were nonetheless

defamatory, because they went beyond the essential facts, and included unnecessary facts

intended to cause the readers to draw a defamatory inference about the plaintiff. See 1994-NMCA-104, ¶ 21, 881 P.2d at 741 ("Readers of the notice might have drawn a defamatory inference. . . . In providing further explanation in the June 7 notice, Defendants probably hoped to encourage the readers to attribute fault to [the plaintiff] rather than current management."); Heyward v. Credit Union Times, 913 F. Supp. 2d at 1189.

## ANALYSIS

The Court concludes that it may properly consider the Police Report in ruling on the Motion, because it fits an exception to the general rule of considering only the facts in the Complaint. Further, the fair report privilege does not shield KOB 4 from liability based on the facts properly before the Court. Finally, Ormrod, a public school teacher, is not a public official for a defamation claim's purposes, so Ormrod is not required to show actual malice. Accordingly, the Court will deny the Motion.

## I. THE COURT MAY PROPERLY CONSIDER THE POLICE REPORT IN RULING ON THE MOTION.

The Court concludes that it may properly consider the Police Report in ruling on the Motion. Generally, a complaint's sufficiency must rest on its contents alone. See Casanova v. Ulibarri, 595 F.3d at 1125; Gossett v. Barnhart, 139 F. App'x at 24 ("In ruling on a motion to dismiss, the district court is limited to the facts pled in the complaint."). There are, however, three limited exceptions to this general principle: (i) documents that the complaint incorporates by reference, see Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. at 322; (ii) "documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity," Jacobsen v. Deseret Book Co., 287 F.3d at 941; and (iii) "matters of which a court may take judicial notice," Tellabs, Inc. v. Makor Issues & Rights,

Ltd., 551 U.S. at 322.  Rule 201 of the Federal Rules of Evidence provides that a court may judicially notice a fact that is not subject to reasonable dispute, because it: "(1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned."  Fed. R. Evid. 201(b).  "[T]he court is permitted to take judicial notice of its own files and records, as well as facts which are a matter of public record."  Van Woudenberg v. Gibson, 211 F.3d at 568.

Here, the Police Report fits the second of these three exceptions.  The first exception does not apply because the Complaint does not incorporate the Police Report by reference.  See Black's Law Dictionary 884 (10th ed. 2014)(defining "incorporation by reference" as "a method of making a secondary document part of a primary document by including in the primary document a statement that the secondary document should be treated as if it were contained within the primary one").

The Police Report fits, however, the second exception.  See Jacobsen v. Deseret Book Co., 287 F.3d at 941.  The Complaint refers to the Police Report.  See Complaint ¶¶ 10-11, at 2.  The Police Report is also "central to the plaintiff's claim."  Jacobsen v. Deseret Book Co., 287 F.3d at 941.  A central piece of Ormrod's claim is that KOB 4 journalists should have known "the difference between allegations contained in a police incident report and a formal charge in court alleging the commission of a crime," Response at 2, before publishing a news story alleging that Ormrod had been "charged with felony child abuse," Complaint ¶ 14, at 2, when no criminal charges were filed, see Complaint ¶ 9, at 2; id. ¶ 12, at 2 ("As professional journalists, Mr. Chandler, Ms. Zucco, and KOB 4 editors and reporters are aware that criminal charges cannot be filed without a criminal complaint or grand jury indictment.").

Further, the parties do not dispute the Police Report's authenticity. At the hearing, Ormrod conceded that the Police Report was authentic. See Tr. at 28:18-19 ("I'm not disputing that that police report was created."). The Police Report therefore fits all of the second exception's requirements, so the Court may properly consider it. See Jacobsen v. Deseret Book Co., 287 F.3d at 941.[10]

Finally, the Police Report is not subject to judicial notice. See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. at 322. Rule 201 of the Federal Rules of Evidence provides that a court may judicially notice a fact that is not subject to reasonable dispute, because it: "(1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned." Fed. R. Evid. 201(b). "[T]he court is permitted to take judicial notice of its own files and records, as well as facts which are a matter of public record." Van Woudenberg v. Gibson, 211 F.3d at 568. The facts in the Police Report are not, "generally known within the trial court's territorial jurisdiction," Fed. R. Evid. 201(b), and the parties do not argue otherwise. Further, the facts in the Police Report are not "accurately and readily determined from sources whose accuracy cannot be reasonably questioned," because one can reasonably question the police officer or the

---

[10]Ormrod does not dispute the Police Report's authenticity; rather, he disputes its completeness and the time at which KOB 4 received it. See Response at 5 ("Notably, the first page of three documents from APS to KOB is not included in the Defendant's exhibit and its exclusion as an exhibit raises questions."). The Tenth Circuit has noted, in discussing the second exception, that "the transcript and copy of the broadcasts likely should have been excluded, since Plaintiffs argued to the district court that KOB-TV may not have released all of the relevant portions of the broadcasts." Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1216 (10th Cir. 2007). Ormrod has not argued, however, how the allegedly missing page might be relevant. Instead, he contends that the "document indicates that the report was not received by Defendant until after its report on its website." Response at 6. See Tr. at 28:9-10 (Bregman)("I have questions about whether they received the police report."). The Court will not make any assumptions about when KOB 4 received the Police Report, or draw any adverse inferences against Ormrod from it.

sources that he or she used in writing the Police Report.  See Police Report at 2 ("During the . . .

interview [redacted] disclosed allegations of abuse consistent with what she reported to me

earlier this date.")(redaction in original).  Finally, the Police Report is not part of the Court's

own files and records, and it is not a matter of public record.  In short, the Police Report fits the

second of the three exceptions, so the Court may properly consider it in ruling on the Motion.

## II.     THE FAIR REPORT PRIVILEGE DOES NOT SHIELD KOB 4 FROM LIABILITY ON THE FACTS BEFORE THE COURT.

The Court concludes that the fair report privilege does not shield KOB 4 from liability

based on the facts that the Court may properly consider at the motion-to-dismiss stage.  Under

Erie, a federal district court sitting in diversity applies "state law with the objective of obtaining

the result that would be reached in state court."  Butt v. Bank of Am., N.A., 477 F.3d at 1179.

Ultimately, "the Court's task is to predict what the state supreme court would do."  Wade v.

EMCASCO Ins. Co., 483 F.3d at 666.  State trial or intermediate court opinions do not bind

federal courts, but federal courts "should attribute [them] some weight . . . where the highest

court of the State has not spoken on the point."  Comm'r v. Estate of Bosch, 387 U.S. at 465.  "If

there be no decision by [the state's highest court], then federal authorities must apply what they

find to be the state law after giving 'proper regard' to relevant rulings of other courts of the

State."  Comm'r v. Estate of Bosch, 387 U.S. at 465.  Where the only opinion on point is "from

the Court of Appeals, [] the Court's task, as a federal district court sitting in this district, is to

predict what the Supreme Court of New Mexico would do if the case were presented to it."

Mosley v. Titus, 762 F. Supp. 2d at 1332.

The Supreme Court of New Mexico has said little regarding the fair report privilege.  It

first adopted this privilege in 1919, holding that "every impartial and accurate report of any

proceeding in a public law court is privileged." Henderson v. Dreyfus, 1919-NMSC-023, ¶ 55, 191 P. 442, 452. It continued that

> this is the general rule, and applies to all proceedings in any court of justice, superior or inferior, whether of record or not. While a person may publish a correct account of the proceedings in a court of justice, yet, if he discolors or garbles the proceedings, or adds comments and insinuations of his own in order to asperse the character of the parties concerned, it is libelous, and not privileged.

Henderson v. Dreyfus, 1919-NMSC-023, ¶ 56, 191 P. at 452. See Rockafellow v. New Mexico State Tribune Co., 1964-NMSC-238, ¶ 18, 397 P.2d 303, 306 ("The article is a fair report of appellant's criminal trial and, as such, privileged."), overruled on other grounds by Reed v. Melnick, 1970-NMSC-094, ¶ 10, 471 P.2d 178, 181; Hubbard v. Journal Pub. Co., 1962-NMSC-013, ¶ 8, 368 P.2d 147, 148 ("[T]hese facts were a part of the court records.").

The Supreme Court of New Mexico has also implied that the fair report privilege applies to other public proceedings and not only to judicial ones. See Hubbard v. Journal Pub. Co, 1962-NMSC-013, ¶ 6, 368 P.2d at 474. In Hubbard v. Journal Pub. Co., the Supreme Court of New Mexico favorably quoted a law review article by Louis Brandeis, explaining that

> "the right to privacy is not invaded by any publication made in a court of justice, in legislative bodies, or the committees of those bodies; in municipal assemblies, or the committees of such assemblies, or practically by any communication made in any other public body, municipal or parochial, or in any body quasi public, like the large voluntary associations formed for almost every purpose of benevolence, business, or other general interest; and (at least in many jurisdictions) reports of any such proceedings would in some measure b[e] accorded a like privilege."

1962-NMSC-013, ¶ 6, 368 P.2d at 474 (quoting Samuel D. Warren & Louis D. Brandeis, The Right to Privacy, 4 Harv. L. Rev. 193, 216-17 (1890)). The Supreme Court of New Mexico continued that, "'[s]ince it obviously is to the interest of the public that information be made available as to what takes place in public affairs, a qualified privilege is recognized under which a newspaper or anyone else may make such a report to the public.'" Hubbard v. Journal Pub.

Co., 1962-NMSC-013, ¶ 7, 368 P.2d at 475 (quoting William. L. Prosser, Law of Torts 623-24 (2d ed. 1955)).

Beyond these cases, however, the Supreme Court of New Mexico has said little about the fair report privilege. All of these cases are at least fifty years old, and, needless to say, no current justice of the Supreme Court of New Mexico served on that court in the 1960s. The Court of Appeals of New Mexico has, however, more recently and thoroughly developed the fair report privilege. See Stover v. Journal Pub. Co., 1985-NMCA-113, ¶ 14, 731 P.2d at 1338; Furgason v. Clauson, 1989-NMCA-084, ¶ 13, 785 P.2d 242, 245.[11] According to the Court of Appeals of New Mexico, "[t]he essence of the fair report privilege is that no liability will attach for the republication of the defamatory statements so long as the republication is a fair and accurate report of an official or public proceeding." Stover v. Journal Pub. Co., 1985-NMCA-113, ¶ 14, 731 P.2d at 1338. The Court of Appeals of New Mexico adopted the Restatement (Second) of Torts' definition of the privilege, which states: "'The publication of defamatory matter concerning another in a report of an official action or proceeding or of a meeting open to the public that deals with a matter of public concern is privileged if the report is accurate and complete or a fair abridgement of the occurrence reported.'" Stover v. Journal Pub. Co., 1985-NMCA-113, ¶ 14, 731 P.2d at 1338 (quoting Restatement (Second) of Torts § 611 (Am. Law. Inst. 1977)). "The fact that statements made in the proceedings were false will not upset the

---

[11]To predict how the state's highest court would rule, the federal court "may seek guidance from decisions rendered by lower courts in the relevant state, appellate decisions in other states with similar legal principles, district court decisions interpreting the law of the state in question, and 'the general weight and trend of authority' in the relevant area of law." Wade v. Emcasco Ins. Co., 483 F.3d at 666 (citations and internal quotation marks omitted). For the reasons given in this Memorandum Opinion and Order, the Court concludes that the Supreme Court of New Mexico would adopt the rules, namely, the Restatement (Second) of Torts, § 611 (Am. Law. Inst. 1977), that the Court of Appeals of New Mexico adopted in Stover v. Journal Pub. Co. and Furgason v. Clauson.

privilege, not even when the reporter knew that the statements were false and reported them anyway." Stover v. Journal Pub. Co., 1985-NMCA-113, ¶ 19, 731 P.2d at 1338 (citing Restatement (Second) of Torts § 611 cmt. a). The Court of Appeals of New Mexico has further expanded the privilege by adopting additional parts of the Restatement (Second) of Torts, explaining that:

> An arrest by an officer is an official action, and a report of the fact of the arrest or of the charge of crime made by the officer in making or returning the arrest is therefore within the conditional privilege covered by this Section. On the other hand statements made by the police or by the complainant or other witnesses or by the prosecuting attorney as to the facts of the case or the evidence expected to be given are not yet part of the judicial proceeding or of the arrest itself and are not privileged under this Section.

Furgason v. Clauson, 1989-NMCA-084, ¶ 17, 785 P.2d at 246 (quoting Restatement (Second) of Torts § 611 cmt. h).

The Court concludes that the Supreme Court of New Mexico, if it were deciding this case, would adopt the Restatement (Second) of Torts definition of the fair report privilege for three reasons. First, the Supreme Court of New Mexico is "very willing to adopt the view of the Restatement of Torts to assist our development of new tort areas." Schmitz v. Smentowski, 1990-NMSC-002, ¶ 49, 785 P.2d at 736. Indeed, the Supreme Court of New Mexico has adopted large swaths of tort law from the Restatement (Second) of Torts. It has "adopted the cause of action of intentional interference with prospective contractual relations, relying on the tort as articulated in Restatement (Second) of Torts § 766(B)(1977)." Schmitz v. Smentowski, 1990-NMSC-002, ¶ 50, 785 P.2d at 736. It has "also recognized the tort of intentional infliction of emotional distress, relying on Restatement (Second) of Torts § 46." Schmitz v. Smentowski, 1990-NMSC-002, ¶ 51, 785 P.2d at 736.

Second, although state intermediate court opinions do not bind federal courts, the Supreme Court has held that federal courts "should attribute [them] some weight . . . where the highest court of the State has not spoken on the point." Comm'r v. Estate of Bosch, 387 U.S. at 465. "If there be no decision by [the state's highest court], then federal authorities must apply what they find to be the state law after giving proper regard to relevant rulings of other courts of the State." Comm'r v. Estate of Bosch, 387 U.S. at 465. Further, in attempting to predict what a state's highest court would do, a federal court "may seek guidance from decisions rendered by lower courts in the relevant state." Wade v. EMCASCO Ins. Co., 483 F.3d at 666. Given that the Court of Appeals of New Mexico has adopted the Restatement's definition of the fair report privilege, and especially given the Supreme Court of New Mexico's willingness to adopt Restatement provisions, the Court should give the Court of Appeals of New Mexico decisions in Stover v. Journal Pub. Co., 1985-NMCA-113, ¶ 14, 731 P.2d at 1338, and Furgason v. Clauson, 1989-NMCA-084, ¶ 17, 785 P.2d at 246, "some weight" and "proper regard" in determining how the Supreme Court of New Mexico would decide this case, Comm'r v. Estate of Bosch, 387 U.S. at 465.

Third, "New Mexico has recognized that tort law is not static -- it must expand to recognize changing circumstances that our evolving society brings to our attention." Schmitz v. Smentowski, 1990-NMSC-002, ¶ 49, 785 P.2d at 736. The Supreme Court of New Mexico cases discussing the fair report privilege are over fifty years old and not well developed. See Henderson v. Dreyfus, 1919-NMSC-023, ¶ 56, 191 P. at 452; Rockafellow v. New Mexico State Tribune Co., 1964-NMSC-238, ¶ 18, 397 P.2d at 306; Hubbard v. Journal Pub. Co., 1962-NMSC-013, ¶¶ 6-7, 368 P.2d at 148. In contrast, the Court of Appeals of New Mexico cases discussing the privilege are newer and more detailed. See Stover v. Journal Pub. Co., 1985-

NMCA-113, ¶ 14, 731 P.2d at 1338; Furgason v. Clauson, 1989-NMCA-084, ¶ 17, 785 P.2d at

246.  Given that the Supreme Court of New Mexico has held that tort law "must expand to

recognize changing circumstances," Schmitz v. Smentowski, 1990-NMSC-002, ¶ 49, 785 P.2d at

736, it makes sense to conclude that the Supreme Court of New Mexico would follow the Court

of Appeals of New Mexico's newer and more detailed decisions in deciding this case.  For these

reasons, the Court concludes that the Supreme Court of New Mexico would adopt the

Restatement's definition of the fair report privilege if this case were before it.[12]

The Restatement's definition of the fair report privilege does not, however, shield KOB 4

from liability based on the facts properly before the Court.  The Restatement states:

> An arrest by an officer is an official action, and a report of the fact of the arrest or
> of the charge of crime made by the officer in making or returning the arrest is
> therefore within the conditional privilege covered by this Section. On the other
> hand statements made by the police or by the complainant or other witnesses or
> by the prosecuting attorney as to the facts of the case or the evidence expected to
> be given are not yet part of the judicial proceeding or of the arrest itself and are
> not privileged under this Section.

Furgason v. Clauson, 1989-NMCA-084, ¶ 17, 785 P.2d at 246 (quoting Restatement (Second) of

Torts § 611 cmt. h).  The first part of this rule does not apply, because there are no facts properly

before the Court indicating that Ormrod was arrested.  First, the Complaint never alleges that

Ormrod was arrested.  Second, neither the two KOB 4 news stories nor the APS Letter, all of

---

[12]The Court also notes that the Restatement (Second) of Torts version of the fair report
privilege has influenced many other state supreme courts.  See Moreno v. Crookston Times
Printing Co., 610 N.W.2d 321, 332 (Minn. 2000)("We find persuasive the Restatement (Second)
of Torts § 611's articulation of the common law on the fair reporting privilege."); Sciandra v.
Lynett, 187 A.2d 586, 600 (Pa. 1963)(favorably citing section 611); Trainor v. The Standard
Times, 924 A.2d 766, 770, 772 (R.I. 2007)(favorably quoting section 611 and holding that
"[p]olice reports have often been held to constitute the sort of official report to which the fair
report privilege may attach"); Solaia Technology, LLC v. Specialty Pub. Co., 852 N.E.2d 825,
843 (Ill. 2006)("We then quoted the second Restatement's version of section 611, in effect,
adopting it as our rule.").

which Ormrod conceded that the Court may consider, <u>see</u> Tr. at 35:20-24 (Court, Bregman), say that Ormrod was arrested. <u>See</u> News Story at 1; Response at 10; APS Letter at 1. Finally, the Police Report does not say that Ormrod was arrested, although the copy submitted to the Court is hard to read. <u>See</u> Police Report at 1-2.

More importantly,

statements made by the police or by the complainant <u>or other witnesses</u> or by the prosecuting attorney <u>as to the facts of the case</u> or the evidence expected to be given are not yet part of the judicial proceeding or of the arrest itself and are not privileged under this Section.

<u>Furgason v. Clauson</u>, 1989-NMCA-084, ¶ 17, 785 P.2d at 246 (quoting <u>Restatement (Second) of Torts</u> § 611 cmt. h)(emphasis added). Jessica Kettler, the Principal of Dennis Chavez Elementary School, wrote the APS Letter, which states that Ormrod "was cited on child abuse charges Friday stemming from an incident involving a student here." APS Letter at 1. The APS Letter continues that "the allegations are limited to one student at this time and the allegations are not sexual. Mr. Ormrod could also face criminal charges." APS Letter at 1. The APS Letter does not mention these allegations' sources. Kettler is thus a witness discussing the "facts of the case" in this letter and reporting such statements is not privileged. <u>See</u> <u>Furgason v. Clauson</u>, 1989-NMCA-084, ¶ 17, 785 P.2d at 246 (quoting <u>Restatement (Second) of Torts</u> § 611 cmt. h). Further, the APS Letter's allegations "are not yet part of the judicial proceeding or of the arrest itself," <u>Furgason v. Clauson</u>, 1989-NMCA-084, ¶ 17, 785 P.2d at 246 (quoting <u>Restatement (Second) of Torts</u> § 611 cmt. h), because there is no criminal judicial proceeding against Ormrod related to the events giving rise to this case, <u>see</u> Complaint ¶ 9, at 2 and, as explained above, there was no arrest.

Finally, the APS Letter is not a report of an official proceeding that an officer or agency of the government filed. See Restatement (Second) of Torts § 611 cmt. d. According to the Restatement (Second) of Torts, "[t]he filing of a report by an officer or agency of the government is an action bringing a reporting of the governmental report within the scope of the privilege." Restatement (Second) of Torts § 611 cmt. d. A school principal writing a letter to parents about a police investigation is not a government officer "filing a report," because the principal is not a police officer, and the letter is not a police report. Although a public school principal is a government employee, nothing in the Restatement (Second) of Torts suggests that reporting any government employees' statements is privileged when that government employee had nothing to do with the official proceeding or action at issue. For these reasons, the Court concludes that the fair report privilege does not shield KOB 4 from liability based on the facts properly before the Court.[13]

---

[13]Although the Court may properly consider the Police Report in ruling on the Motion, the facts before the Court suggest that KOB 4 did not have the Police Report when it ran its first news story. KOB 4 ran its first news story at 1:16 p.m. on May 12, 2016. See Complaint ¶ 14, at 2. The fax header on the Police Report has a time stamp of "14:33" or 2:33 PM on May 12, 2016. Police Report at 1-2. Because the Court must accept these facts as true in ruling on the Motion, the Court concludes, on these facts, that KOB 4 did not have the Police Report at the time that it published its first news story.

If, however, KOB 4 can later show that it possessed and used the Police Report in writing its news story, then the fair report privilege may apply. "Police reports have often been held to constitute the sort of official report to which the fair report privilege may attach." Trainor v. The Standard Times, 924 A.2d at 772. See Porter v. Guam Publications, Inc., 643 F.2d 615, 617 (9th Cir. 1981)(holding that a "police blotter" news item was statutorily privileged as a "fair and true report, without malice, in a public journal of a judicial or other public official proceeding"). Under the Restatement (Second) of Torts, "the privilege covered in this Section extends to the report of any official proceeding, or any action taken by any officer or agency . . . of any State." Restatement (Second) of Torts § 611, cmt. d. "The filing of a report by an officer or agency of the government is an action bringing a reporting of the governmental report within the scope of the privilege." Restatement (Second) of Torts § 611, cmt. d. Reporting on a police report that a police officer files therefore triggers the fair report privilege. See Trainor v. The Standard

Times, 924 A.2d at 772 ("Police reports have often been held to constitute the sort of official report to which the fair report privilege may attach.").

The Police Report lists the "offense" as "child abuse" and then lists "30-6-1." Police Report at 1. N.M. Stat. Ann. § 30-6-1 is a criminal statute for "Abandonment or abuse of a child." N.M. Stat. Ann. § 30-6-1. Abuse of a child is a felony. See N.M. Stat. Ann. § 30-6-1 (E)-(H). KOB 4's news story stated that Ormrod was "charged with felony child abuse." News Story at 1; Response at 10. Ormrod was not, however, "charged" with felony child abuse as that word is used legally, i.e. indicted. Complaint ¶ 9, at 2. The Police Report only shows that a parent and a student accused Ormrod of child abuse and that a police officer investigated the situation and filed the Police Report. See Police Report at 2.

Under the fair report privilege, the report must be "accurate and complete or a fair abridgment of" the Police Report. Restatement (Second) of Torts § 611. Importantly, "although it is unnecessary that the report be exhaustive and complete, it is necessary that nothing be omitted or misplaced in such a manner as to convey an erroneous impression to those who hear or read." Restatement (Second) of Torts § 611, cmt. f. The question is therefore whether KOB 4's use of the word "charged" conveyed an "erroneous impression" to readers that Ormrod had been indicted for felony child abuse, in contrast to simply accused or investigated.

Under New Mexico law, "if the statement could be susceptible of a defamatory meaning as well as an innocent one, a question of fact is presented for the jury, which is required to determine which meaning was understood by the recipient." Moore v. Sun Publ'g Corp., 1994-NMCA-104, ¶ 13, 881 P.2d at 740 (citing N.M. Rules Ann., Civ. UJI 13-1007). The Court notes that, under Erie, this rule would be substantive rather than procedural, because if the Court adopted a different rule, those with borderline defamation claims might forum-shop, and a key goal of Erie is to discourage forum-shopping. See Hanna v. Plumer, 380 U.S. 460, 468 (1965).

Even if a statement is clearly defamatory, however, the fair report privilege may still apply, because it protects "the publication of defamatory matter." Restatement (Second) of Torts § 611. There are many possible interpretations of the word "charged." An average non-lawyer reading KOB 4's news story may think that the word "charged" simply means that the police accused Ormrod of committing a crime, or that non-police -- such as the school or parents -- accused Ormrod, and not necessarily that Ormrod was arrested or indicted.

> [T]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

Iqbal, 556 U.S. at 678 (internal quotations and citations omitted). KOB 4's news story says that Ormrod was "charged with felony child abuse," Complaint ¶ 14, 2; News Story at 1, when no criminal charges were filed, see Complaint ¶ 9, at 2. The Court may draw the reasonable inference that KOB 4 is liable for the misconduct alleged, defamation, because one could reasonably read KOB 4's news story and think that "charged" meant that Ormrod was arrested or indicted for felony child abuse, thereby creating an unprivileged "erroneous impression to those who hear or read." Restatement (Second) of Torts § 611, cmt. f. For these reasons, even if KOB

## III.    ORMROD IS NOT A PUBLIC OFFICIAL FOR A DEFAMATION CLAIM'S PURPOSES.

The Court concludes that Ormrod, a public school teacher, is not a public official for a defamation claim's purposes. The First Amendment "'prohibits a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with 'actual malice' -- that is, with knowledge that it was false or with reckless disregard of whether it was false or not.'" Milkovich v. Lorain Journal Co., 497 U.S. 1, 14 (1990)(quoting N.Y. Times v. Sullivan, 376 U.S. at 279-80). The Tenth Circuit uses a two-prong inquiry to determine whether an individual is a public official for purposes of the rule in New York Times v. Sullivan: (i) does the person "'have or appear to the public to have, substantial responsibility for or control over the conduct of governmental affairs,'" Gray v. Udevitz, 656 F.2d 588, 591 (10th Cir. 1981)(quoting Rosenblatt v. Baer, 383 U.S. 75, 85 (1966)); and (ii) does the person's position have "'such apparent importance that the public has an independent interest in the qualifications and performance of the person who holds it, beyond the general public interest in the qualifications and performance of all government employees.'" Gray v. Udevitz, 656 F.2d at 591 (quoting Rosenblatt v. Baer, 383 U.S. at 86). See Anaya v. CBS Broadcasting Inc., 626 F. Supp. 2d 1158, 1199-1201 (D.N.M. 2009)(Browning, J.)(applying this test and holding that a procurement assistant at the Los Alamos National Laboratory is not a public official).

First, a public school teacher does not "have or appear to the public to have, substantial responsibility for or control over the conduct of governmental affairs." Gray v. Udevitz, 656 F.2d at 591. The Tenth Circuit has held that school board members are public officials, because

---

4 possessed and used the Police Report in writing its news story, Ormrod still survives a motion to dismiss.

> the governance of a public school system is of the utmost importance to a community, and school board policies are often carefully scrutinized by residents. Members of the local school board, who are elected to make decisions regarding local education, clearly have, or appear to the public to have, substantial responsibility for or control over the conduct of governmental affairs. The strong public interest in ensuring open discussion of their job performance warrants the conclusion that school board members are public officials.

Garcia v. Board of Education of Socorro Consolidated School District, 777 F.2d 1403, 1408 (10th Cir. 1985)(internal quotations and citation omitted). Although teachers have the important responsibility of educating children, they fulfill a constitutionally different role than their supervisors on the school board. Public school teachers do not govern the public school system or make local education policy, and they are not elected officials. The Court therefore concludes that public school teachers, including Ormrod, do not "have or appear to the public to have, substantial responsibility for or control over the conduct of governmental affairs," Gray v. Udevitz, 656 F.2d at 591.

Second, Ormrod's position as a public school teacher does not have "such apparent importance that the public has an independent interest in the qualifications and performance of the person who holds it, beyond the general public interest in the qualifications and performance of all government employees." Gray v. Udevitz, 656 F.2d at 591. The Tenth Circuit has held this prong satisfied when an individual worked in "the high echelons of the FBI where he had an influential role in fundamental issues of this country's national and foreign policy." Revell v. Hoffman, 309 F.3d 1228, 1232 (10th Cir. 2002). The Tenth Circuit has also found this prong satisfied as to police officers, because they "possess[] both the authority and the ability to exercise force. Misuse of [their] authority can result in significant deprivation of constitutional rights and personal freedoms, not to mention bodily injury and financial loss." Gray v. Udevitz, 656 F.2d at 591 (alterations added). In contrast, public school teachers are not national or

foreign policy makers, they do not have the authority to exercise force, and misuse of their authority does not usually result in constitutional deprivations.

Finally, the Court has noted that each Tenth Circuit example of a public official "involves a plaintiff or set of plaintiffs who was elected, or who was involved in law enforcement -- which involves direct and visible interaction and the ability to apply the force of government -- and/or high echelon, high profile positions."  Anaya v. CBS Broadcasting Inc., 626 F. Supp. 2d at 1201. A public school teacher is neither elected nor involved in law enforcement.  For these reasons, the Court concludes that a public school teacher, including Ormrod, is not a public official for First Amendment purposes.  Ormrod is therefore not required to show actual malice in pursuing his defamation claim against KOB 4.  See Milkovich v. Lorain Journal Co., 497 U.S. at 14.

**IT IS ORDERED** that: (i) the Defendant's Motion to Dismiss Complaint for Defamation, filed July 11, 2017 (Doc. 5), is denied; and (ii) Defendant Hubbard Broadcasting, Inc. shall show cause, within ten calendar days of the date of this Memorandum Opinion and Order, why the Court should not remand this case to the Second Judicial District Court, County of Bernalillo, State of New Mexico, for lack of subject-matter jurisdiction.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Sam Bregman
Bregman & Loman, P.C.
Albuquerque, New Mexico

    *Attorneys for the Plaintiff*

Geoffrey D. Rieder
Zachary R. Cormier
Keleher & McLeod, P.A.
Albuquerque, New Mexico

-- and --

Travis G. Jackson
Meghan Dimond Stanford
Foster, Rieder & Jackson, P.C.
Albuquerque, New Mexico

  *Attorneys for the Defendant*